# BREEN STONE COMPANY v. W. F. T. BUSHNELL COMPANY.[1]

April 26, 1912.

Nos. 17,465—(44).

**Contract construed.**

Contract to furnish cut stone as per plans and specifications for certain buildings construed, and *held* not to include a provision of such plans and specifications that the contractor must secure the architect's certificate of performance as a condition precedent to the right to demand payment.

**Same — waiver by acceptance and use.**

Such contract construed, and *held* to be in the nature of an executory contract of sale upon condition precedent, so that acceptance and use of the stone waived all nonconformity thereof to plans and specifications known to the owner prior to such acceptance and use.

**Severance of damages.**

Defendant, not having, either by its pleadings or its proof, attempted to sever the damages flowing from such previously known nonconformity from those flowing from subsequently discovered nonconformity, *held* not entitled to any recovery by way of recoupment for the latter.

Action in the district court for Ramsey county to recover $368.01, balance alleged to be due upon the purchase price of certain cut stone. The substance of the pleadings is given in the opinion (page 286). The case was tried before Dickson, J., and a jury which returned a verdict in favor of plaintiff for $355.37. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*O'Brien, Young & Stone* and *Taubman & Williamson,* for appellant.

*A. E. Boyesen* and *H. H. Flor,* for respondent.

PHILIP E. BROWN, J.

In 1910, the defendant erected a building in Aberdeen, South Da-

[1] Reported in 135 N. W. 993.

kota, known as the Dakota Farmer Building; the plans and specifications therefor being prepared by Ellerbe & Round, a firm of architects of St. Paul, Minnesota, and the construction work being done by the Lepper Construction Company, under the supervision of one Arnold, the latter having been employed by the defendant to superintend such construction. On June 21, 1910, the plaintiff wrote the said Ellerbe & Round as follows: "We will furnish all the cut stone for the new Dakota Farmer Building at Aberdeen, South Dakota, the same to be cut according to plans and specifications and ready to set in building, and delivered f. o. b. cars Aberdeen, South Dakota, for the sum of thirty-eight hundred dollars ($3,800.00) out of Bedford stone."

On June 9, 1910, the defendant wrote the plaintiff as follows: "I have before me your letter of June 2d, addressed to Ellerbe & Round, Architects, St. Paul, Minnesota, offering to furnish cut stone according to plans and specifications for the new Dakota Farmer Building at Aberdeen for the sum of $3,800.00 f. o. b. Aberdeen. I beg to advise that we wish to accept this proposition, and just as soon as Mr. Ellerbe can prepare you a set of plans he will send them to you. Mr. Ellerbe informs us that you are in position to get out the work very promptly, and, of course, this acceptance is subject to that understanding."

To this the plaintiff replied, under date of June 10 as follows: "We have your letter of June 9th, awarding us the contract for the cut stone for the new Dakota Farmer Building at Aberdeen, according to plans and specifications by Ellerbe & Round, for the sum of $3,800.00, f. o. b. cars Aberdeen, for which we wish to thank you." The balance of this letter was devoted to the matter of the time it would take to get the stone out, and closed with an assurance that the plaintiff could arrange to get the stone out as fast as the contractor would need it.

The plans and specifications referred to in this correspondence provided, among other things, as follows:

"32. Cut Stone. All window sills, main entrance, including columns, bases, caps, lintels, moulded jambs, entabulatures, steps, and

balustrades; the base up to the water table, water table, and cornice with moulded medallions, and carved letters, and window casings on the main front and two sides returns, and wherever stone is indicated on plans and sections shall all be composed of the best quality blue Bedford stone of uniform color and hardness, free from sand holes and rust, and cut so as to lay on its natural bed and set in the wall. All stone shall be worked in accordance with the detail drawings, with true surfaces and sharp angles and straight lines. All sills shall be cut with lugs, and all sills and projecting courses shall be carefully fitted together at joints and no joint to exceed $3/_{16}''$ in width. All stone to have a bearing on the wall of at least 5'', and in all cases 1–3 more than its projections. No patching to be allowed. All exposed surfaces to be rubbed to a uniform smooth surface."

As to payments, paragraph 11 of these plans and specifications provided: "Payments will only be made upon certificate of the architect and in accordance with the terms of the contract. No payments made on account of work during its progress and no prior inspection shall be construed as an acceptance of the work executed by the contractor. * * * "

And in the preliminary specifications it is provided: "Where the word 'contractor' occurs in this specification, it shall be taken to mean the person, firm, or corporation, who has entered into contract with the owner for that portion of the work referred to in the particular section or paragraph of the specification wherein the work occurs."

Paragraph 5 refers to the drawings, and makes it the duty of the contractor to notify the architects in the event of mistakes, omissions, etc., in the drawings, and of anything necessary to a clear understanding of the work to be done, or of errors as to "instruments furnished or in work done by other contractors."

Pursuant to the agreement above set forth, the plaintiff proceeded to furnish the stone called for thereby, and prior to the bringing of this action delivered f. o. b. cars at Aberdeen all the stone contracted by it to be delivered, all of which stone was unloaded and

used in the said building by the said Lepper Construction Company; and prior to such use the defendant, its architects, and its superintendent knew that practically all of the stone which the defendant thereafter claimed to be defective and not in accordance with the said plans and specifications did not so comply with such plans and specifications; that is, substantially all the alleged defects and shortcomings of the stone were known by the defendant before the stone was used.

The plaintiff brought this action to recover an alleged balance of the purchase price of the said stone of $368.01, and alleged in its complaint, in substance, the making of a contract with the defendant for the delivery of the said stone, the delivery of the stone, the payment by the defendant of $3,431.99 on the purchase price thereof, and the indebtedness of the defendant for a balance of $368.01.

The defendant, in its answer, admitted the making of the contract, the alleged payment on account thereof, and then, by way of defense, alleged that the plaintiff had neglected to comply with the plans and specifications, and had failed to obtain a certificate from the architects that the material furnished by the plaintiff complied with such plans and specifications, and that certain unnecessary delay occurred in the furnishing of the stone, to the damage of the defendant in the sum of $500. And, further answering, the defendant, by way of defense and counterclaim, alleged the failure of the plaintiff to comply with the terms of the contract, to the damage of the defendant in the sum of $500, and demanded judgment against the plaintiff in the sum of $131.99. The plaintiff's reply denied the allegations of the answer. The plaintiff had a verdict for $355.37, and this appeal is from an order denying the defendant's alternative motion for a judgment notwithstanding the verdict or for a new trial.

1. The correspondence of the parties above set out, and so much of the plans and specifications as may, by reference, be deemed to be incorporated therein, constitutes the sole expression of their agreement, and, standing alone, it is questionable whether such correspondence shows that the minds of the parties ever met in contrac-

tual compact. However, the pleadings concede the existence of an express contract, and these letters, as above stated, constitute the sole expression thereof, and the intent of the parties must be sought therefrom.

It is unquestionably true, as contended by the defendant, that if the contract contemplated that the plaintiff should procure the architects' certificate as a condition precedent to the right to demand payment, then the plaintiff was not entitled to a verdict in this action; for it is admitted that the plaintiff procured no such certificate. The plans and specifications referred to are too voluminous to set out herein in full; but we are satisfied, from a careful consideration thereof, that paragraph 11, above quoted, has no application to this case. We think that the plans and specifications contemplated the letting of the construction of the said building as an entirety, or at least contemplated construction work, and hence that the said paragraph 11 was not intended to apply to one merely furnishing material. In any event it does not appear that the minds of the parties to this action ever met upon anything except that the plaintiff should furnish, for a certain price, certain stone, which was to conform to the said plans and specifications in the matter of quality, cutting, etc. We hold, therefore, that no certificate of the architect was necessary in this case. The practical construction which the parties placed upon their contract likewise confirms this view.

2. The next claim of the defendant involves the main question in the case. It claims that, notwithstanding its acceptance and use of all of the stone furnished by the plaintiff, the latter was nevertheless bound to prove substantial performance of the contract, and that the court erred in its various instructions, in that such instructions placed upon the defendant the burden of proving the plaintiff's failure substantially to perform the contract and the damage to the defendant therefrom, and in that such instructions practically eliminated the defendant's right to counterclaim for damages.

We think, however, that the defendant's contentions in this connection are based upon an erroneous theory of the case, to wit, that the contract in controversy is a technical building contract, upon

which the plaintiff is entitled to recover only under the doctrine of substantial performance. If this theory were correct, it may be that the instructions of the court were erroneous, and it may be that the said instructions were given upon this theory. But, be that as it may, in our view of the case the contract for the furnishing of this stone was not a building contract, but was, at least so far as the rights of the parties herein involved are concerned, an executory contract of sale upon condition precedent; and if, upon this theory of the case, the conclusion arrived at by the jury was correct, any error in the instructions is manifestly harmless.

Indeed, in our view of the case, the instructions were more favorable to the defendant than it was entitled to, for they allowed it to recoup its damages, if it proved that the plaintiff did not substantially perform its contract, notwithstanding that the evidence conclusively showed that the greater portion of the defendant's damage, if any, must have flowed from defects and shortcomings in the stone which were known to the defendant before it used the stone; whereas, the contract being, as we have indicated, an executory contract of sale upon condition precedent, the defendant was entitled, at the most, to recover only for defects not discovered until after acceptance and use for which as such there is no claim made either in the pleadings or proof.

It may be that such a contract as this may, as to latent defects not discovered or discoverable until after the material has been placed in the building, be deemed to be in the nature of a building contract, as distinguished from a sale on inspection. See Utah v. James, 25 Utah, 434, 71 Pac. 986. But certainly, as regards the effect of acceptance and use of the material after knowledge of its failure to comply with the plans and specifications, we do not think the analogy applies. See Wheaton v. Lund, 61 Minn. 94, 63 N. W. 251; Breen v. Moran, 51 Minn. 525, 53 N. W. 755; Talbot v. Gorman, 103 Mich. 403, 61 N. W. 655, 27 L.R.A. 96; Wisconsin Red Pressed Brick Co. v. Hood, 54 Minn. 543, 56 N. W. 165.

The only possible view upon which the defendant in this case could be allowed damages for defects in the stone known to it before ac-

ceptance and use would be upon an implied warranty that the stone was fit for the purpose, known to the plaintiff, for which it was intended (see Breen v. Moran, supra), or upon an express warranty (see Wheaton v. Lund, supra). But such a recovery is precluded in this case by the fact that the stone was to be and was cut and furnished pursuant to definite plans and specifications furnished by the defendant, out of which arose no warranty, either express or implied, but only a condition precedent to acceptance, which condition necessarily became inoperative upon acceptance. Thompson v. Libby, 35 Minn. 443, 29 N. W. 150; Maxwell v. Lee, 34 Minn. 511, 27 N. W. 196; Wisconsin Red Pressed Brick Co. v. Hood, supra; Talbot v. Gorman, supra; Brown v. Baird, 5 Okla. 133, 48 Pac. 180; Gaylord v. Allen, 53 N. Y. 515. In Schwartz v. Church of the Holy Cross, 60 Minn. 183, 62 N. W. 266, the court, while holding that mere temporary use of an altar set up in the defendant's church by the plaintiff did not show such acceptance as required a verdict relieving the defendant from payment therefor, nevertheless propounded the law as follows:

"The law is quite strict in holding that, if an article is not according to contract, the vendee must exercise the right of rejection within a reasonable time, and as acts speak louder than words, it is undoubtedly true that if, after inspection, the vendee uses the property in a way in which he would have no right to use it unless he was owner of it, such use will, as a general rule, be deemed an acceptance, however much he may protest in words that he does not and will not accept."

In Ashland v. Shores, 105 Wis. 122, 81 N. W. 136, the law is laid down as follows: "Where property is delivered by one person to another, as fulfilling an executory contract between them requiring such delivery, and the latter neglects to notify the former that the property is not accepted as complying with the contract within a reasonable time after a fair opportunity to inspect it, an acceptance will be inferred." This case involved a technical building contract, and yet the court applied the rule as stated and the same rule was applied to a building contract in Siebert v. Roth, 118 Wis. 250, 95

117 M.—19.

N. W. 118; it being held in both of these cases that the owner could not, after acceptance, counterclaim for damages for defects discovered or readily discoverable before acceptance. See also Marine Iron Co. v. Wiess, 148 Fed. 145, 78 C. C. A. 279.

We do not deem it necessary, however, to subscribe to this extension of the rule to technical building contracts, as we have already held that the contract in this case is not such. If the plaintiff had contracted to lay the stone in the building, the case might have been different. See Walstrom v. Oliver-Watts, 161 Ala. 608, 50 South. 46. But not having done so, and having contracted merely to deliver the stone f. o. b. cars at Aberdeen, we think it is clear that the contract is one of sale, as distinguished from a building contract, with the consequence that defendant cannot recover for defects and shortcomings of the stone known by it before acceptance and use of the stone. And as upon the trial there was no severance of damages in the proof with reference to defects known before acceptance and use and those developing or becoming apparent thereafter, we do not think the defendant is entitled to anything by way of recoupment or counterclaim, other than as allowed for delay by the trial court on the stipulation of the parties.

Order affirmed.